In re: **SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION**

No. **MDL–721(RLA).**
No. **CIV.87–0006(RLA).**

United States District Court,
D. Puerto Rico.

Nov. 5, 2004.

---

Peter Berkowitz, San Juan, PR, for Plaintiff.

Luis F. Antonetti–Zequeira, Goldman Antonetti & Cordova, San Juan, PR, for Defendant.

### ORDER NO. 739 IN THE MATTER OF AMERICAN NATIONAL FIRE INSURANCE COMPANY'S CONTRIBUTION TO DEFENSE COSTS OF LYON AND DUPONT–RELATED ENTITIES

ACOSTA, District Judge.

American National Fire Insurance Company's (AMERICAN NATIONAL) Motion for Summary Judgment (docket No. 19009) requests dismissal of the claims asserted against it in the Third Amended Cross Claim (docket No. 8702) filed by American International Insurance Company of Puerto Rico (AIICO) and the Insurance Company of the State of Pennsylvania (ISOP). AIICO/ISOP have opposed movant's request (docket No. 19023).

### Origins of the Litigation [1]

AMERICAN NATIONAL was the primary general liability insurer for the William Lyon Company, a California residential construction and development company, and related entities, including William Lyon individually.

AIICO and ISOP (hereinafter collectively referred to as AIICO) were the primary general liability insurers for the Dupont Plaza Hotel and related entities when the Hotel fire took place on December 31, 1986. Among their insured were the San Juan Dupont Plaza Corporation, Holders Capital Corporation (Holders), Hotel Systems International (HSI), Hotel Equipment Leasing Associates (HELA) and Wil

---

**1.** This recitation traces substantially the Court of Appeals' decision in *In re San Juan Dupont* *Plaza Hotel Fire Litig.,* 45 F.3d 564 (1st Cir. 1995) (hereinafter *Dupont Plaza I* ).

liam Lyon, in his capacity as director and shareholder of the various Dupont Plaza entities. AIICO, as primary insurers of the Hotel, financed the massive fire litigation defense, expending more than $40,000,000.

Holders and William Lyon tendered their defenses to AMERICAN NATIONAL soon after the fire injury suits commenced. AMERICAN NATIONAL agreed to defend Lyon, subject to a reservation of rights to deny coverage on the ground that Lyon had not been sued in an insured capacity. AMERICAN NATIONAL, however, declined to provide a defense to Holders on the basis that Holders was not its insured.[2]

All three insurers were eventually joined as defendants in the fire-injury litigation. In February 1989, AIICO filed a cross-claim against AMERICAN NATIONAL, seeking contribution for their costs of defending Lyons and the Lyons-related entities.

In May of 1989, upon settlement of Phase I of the litigation, all three insurers contributed their coverage limits as damages to the victims' settlement fund. AMERICAN NATIONAL paid $1 million to the plaintiffs but expressly reserved its right to subsequently dispute the obligation to contribute to defense costs.

During the course of sorting out the contractual liabilities of the various insurers during Phase III—the insurance litigation phase—we granted judgment for AMERICAN NATIONAL on AIICO's cross-claim for defense costs. See Order No. 495 (docket No. 18401). On appeal, the First Circuit remanded the case for this Court to resolve the legal issue not addressed in our earlier decision: the scope of AMERICAN NATIONAL's duty to defend LYON and the Lyon-related entities under California law. See Dupont Plaza I, 45 F.3d at 568.

The Court having been fully briefed,[3] we reiterate our position, first enunciated in Order No. 495, that AMERICAN NATIONAL was not obligated to provide a defense to Lyon and/or the related Lyon entities, with respect to the fire litigation in San Juan, Puerto Rico, under the terms of the policy at issue.

**Duty to defend under California law**

The parties agree that California law governs the insurance coverage question at issue. See also Dupont Plaza I at 568–569. The Dupont Plaza I court also clearly framed the dispute: the reach of the California law on the duty to defend.

To ascertain if a particular policy provides a potential for coverage and a duty to defend, California courts have been guided by the principle that interpretation of an insurance policy is a question of law. Waller v. Truck Ins. Exch., 11 Cal.4th 1, 16, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995).

One of these well established fundamental rules of law requires an insurer to defend an insured in any action filed against the insured provided there is a potential of liability within the policy coverage. Foster–Gardner, Inc. v. Nat'l. Union Fire Ins. Co., 18 Cal.4th 857, 869, 77 Cal.Rptr.2d 107, 959 P.2d 265 (1998); Buss v. Superior Court, 16 Cal.4th 35, 46, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997); Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). Therefore, whenever

---

**2.** AMERICAN NATIONAL also filed a declaratory judgment action in a California federal court to resolve the coverage issue which was subsequently consolidated with this MDL action and dismissed without prejudice.

**3.** See docket Nos. 19009; 19023; 19030. See also docket Nos. 19265 and 19269, for which leave to file is GRANTED.

there is a potential for coverage the insurer has a duty to provide a defense even though there are defenses to the claim, or the facts show that the claim is within a policy exclusion, or even when it believes the claims are "groundless, false, or fraudulent". *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 273–275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

■ However, "where there is *no* possibility of coverage, there is no duty to defend." *Fire Ins. Exchange v. Abbott*, 204 Cal.App.3d 1012, 1029, 251 Cal.Rptr. 620 (1988) (quoting *State Farm Fire & Cas. Co. v. Superior Court*, 191 Cal.App.3d 74, 77, 236 Cal.Rptr. 216 (1987)). This is so because the duty to defend, although broader than the insurer's duty to indemnify, is not unlimited. It is measured by the nature and kinds of risks covered by the policy. *Waller*, 11 Cal.4th at 25, 44 Cal.Rptr.2d 370, 900 P.2d 619.

■ California courts, relying on *Gray v. Zurich*, have made it consistently clear that the determination of whether a duty to defend exists will be usually made, in the first instance, by comparing the allegations of the complaint against the terms of the policy. *Gray* 65 Cal.2d at 275–77, 54 Cal.Rptr. 104, 419 P.2d 168; *Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153; *Waller*, 11 Cal.4th at 24, 44 Cal.Rptr.2d 370, 900 P.2d 619. However, whether there is potential for liability and thus a duty to defend is not based solely on the theories and facts as set forth in the complaint. Rather, the insurer has a duty to investigate the claim and surrounding facts. It must also go beyond the pleadings to ascertain whether there may be some potential liability under the policy. *Gray v. Zurich*, 65 Cal. 2d at 276, 54 Cal.Rptr. 104, 419 P.2d 168. The determination of a potential for coverage is made from the facts alleged in the complaint as well as those ascertained through a reasonable investigation from any source; in other words, whether such facts would support liability under any theory under the policy. *Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. In sum, there is no duty to defend, and ergo, no liability for defense costs, where no potential for coverage of any claim under the policy exists, once all facts known and alleged from all sources have been ascertained. *Buss*, 16 Cal.4th at 47, 65 Cal. Rptr.2d 366, 939 P.2d 766.

The Supreme Court of California has also made clear that when coverage is not based on issues of fact-because the facts are clear and undisputed-the matter turns solely on a question of law. The insurer does not have a duty to defend absent any possibility of coverage. *Waller*, 11 Cal.4th at 25–26, 44 Cal.Rptr.2d 370, 900 P.2d 619; *McLaughlin v. Nat'l. Union Fire Ins. Co.*, 23 Cal.App.4th 1132, 1152, 29 Cal.Rptr.2d 559 (1994); *A–Mark Fin. Corp. v. CIGNA Prop. & Cas. Co.*, 34 Cal.App.4th 1179, 1192, 40 Cal.Rptr.2d 808 (1995); *see also,* Hon. H. Walter Croskey, Thomas W. Johnson and Réx Hussman, Cal. Prac. Guide Ins. Lit., § 7:586 (2004 ed.) [4]

Relying primarily on *Mc Laughlin* and *Waller,* AMERICAN NATIONAL maintains that it had no duty to defend in this case since the only potential for liability turned on an unresolved legal question even though a potential for coverage may

---

4. The First Circuit specifically framed the dispute on remand as an "unresolved legal issue", i.e., whether, despite lack of coverage under its policy, AMERICAN NATIONAL is obligated to provide a defense to AIICO/ISOP's insured. This controversy centers on "the extent of the duty to defend under California law" in a case in which the facts of the underlying claim "are not in dispute" but the potential for coverage under a policy may exist. *Dupont Plaza I*, 45 F.3d at 568.

have existed prior to that determination. *McLaughlin,* 23 Cal.App.4th at 1151, 29 Cal.Rptr.2d 559. Since the First Circuit has since determined that Lyon and the Dupont defendants were not insureds under its policy, AMERICAN NATIONAL contends that it has no duty to provide them with a defense. *See Dupont Plaza I* at 568. ("[O]ur opinion today in the companion case significantly limits the arguments left open to AIICO/ISOP and also appears to render its discovery request irrelevant. . . . Broadly speaking, as to coverage for liability, [AMERICAN NATIONAL]'s position appears to be materially identical to that of PEIC and FSIC decided in the companion *Lyon* case. The reasons we have given in that case for exculpating PEIC and FSIC *make clear that claims of liability coverage by Lyons or Holders against [AMERICAN NATIONAL] would also fail.*") (emphasis ours).

AIICO insists that issues of fact prevent the application of *McLaughlin* and *Waller* to their claim of defense costs contribution. It argues that coverage under AMERICAN NATIONAL's policy "depended upon the establishment and application of unknown or disputed facts" regarding the meaning and purpose of the various provisions in AMERICAN NATIONAL's policy, and regarding Lyon's ownership interests and responsibilities to the Lyon entities.

■ We disagree with respondent's position. The meaning and purpose of AMERICAN NATIONAL's policy has already been determined by the First Circuit as a matter of law. Furthermore, any alleged factual controversy as to whether Lyon was the sole proprietor of any Dupont Family entity has also been determined. Lyon was not a sole proprietor, the AMERICAN NATIONAL policy limited Lyon's individual coverage to the con-

duct of business of which he was the sole proprietor and the sole proprietor endorsement that appears in the AMERICAN NATIONAL policy "limits claims under the omnibus clause without regard to who drafted the provisions." *Dupont Plaza I,* 45 F.3d at 568. Consequently, there are no "factual" determinations to be made.

Furthermore, inasmuch as this is "a case in which the facts are not in dispute" *Id.,* AIICO cannot create a factual dispute where there in fact is none. Similarly, AIICO cannot defeat summary judgment with "mere assertions that coverage may exist" *Montrose,* 6 Cal.4th at 300–301, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

AIICO's argument also sidesteps another aspect. The AMERICAN NATIONAL policy provides by endorsement that there is "no obligation to investigate or defend any claim where coverage is not provided under this policy". As AMERICAN NATIONAL points out, this endorsement reduces the scope of its defense obligation by replacing the "potential for coverage" standard with a stricter standard that the suit for which a defense is sought be actually covered. Given the fact that coverage was never provided, *Dupont Plaza I,* 45 F.3d at 568, application of the endorsement leads to the conclusion that no defense was owed to Lyon or any other person or entity claiming coverage through Lyon.

In conclusion, we agree with AMERICAN NATIONAL that *Waller* laid to rest the legal versus the factual debate under California law. Where coverage depends on the resolution of a legal issue, no duty to defend is triggered. Further, despite AIICO's fervent efforts to cast the legal issues in this case as factual in nature, nowhere are any disputed facts identified. Absent any facts in dispute, the only issue determinative of coverage in this case is a legal one, i.e., the meaning of the policy terms; therefore, there never was a poten-

tial for coverage necessary to trigger AMERICAN NATIONAL's duty to defend.

Lastly, AIICO argues that because AMERICAN NATIONAL did defend Lyon and tendered its policy limits under a reservation of rights [to deny defendant obligations] it is judicially estopped from now arguing that coverage did not turn on questions of fact. However, the fact that insurers initially accept an insured's tender of defense and then contribute to the insured's defense costs, does not mean, *per se*, that there was ever a potential for coverage. *See e.g., Ringler Assoc. Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1192, 96 Cal.Rptr.2d 136 (2000).

Further, as recognized by the First Circuit Court, because AMERICAN NATIONAL could have been subject to harsh penalties under California law had it breached the duty to defend, it was advisable to afford a defense pending resolution of the coverage issue.

> The prudent insurer must adopt the policy of "when in doubt, defend." If there are any doubts whether the insurer is obligated to defend the insurer, these doubts will be resolved by the court against the insurer. If the insurer resolves the question in favor of rejecting the defense, and it is later determined that the rejection was a breach of that duty, it could be liable for extensive damages. Therefore, whenever there is any doubt, the insurer should undertake the defense of the claim, preserving its rights by a "reservation of rights" notice to the insured, and seek judicial resolution of its obligation to provide the defense to the insured.

Harry D. Miller and Marvin B. Starr, 3 California Real Estate § 7:119 (3d ed.) (citations omitted).

## Conclusion

We reiterate that the dispute before us for resolution, as formulated by the First Circuit Court on remand, is a legal one which was squarely addressed and decided in *Waller*. There, the Supreme Court of California emphatically rejected the notion that uncertainty in the law can create a potential for coverage and therefore, trigger a duty to defend. *See* John K. DiMugno and Paul E.B. Glad California Insurance Law Handbook § 46:19.14 (2004 ed.); *see also,* Kirk Alan Walton, *California Supreme Court Survey*, 24 Pepp. L.Rev. 301 (1996) ("[T]he [Supreme] court declared [in *Waller*] that there is no duty to defend where the only potential basis for coverage turns on the resolution of a question of law".); William A. Cerillo, *Insurer's Duty to Defend Gets Some Definition and Refinement*, 63 Def. Couns. J. 243 (April 1996).

In view of the applicable principles on the duty to defend as established by the California courts, we reaffirm our earlier decision in Order No. 495 and hereby FIND AMERICAN NATIONAL owed no duty to defend Mr. Lyon, Holders, HSI, HELA or any other Dupont defendant for which AIICO seeks contribution to defense costs. To paraphrase an insurance law commentator:

> A sophisticated institutional litigant like Lyon, assisted by presumptively able counsel, simply could not reasonably have believed that the premiums it had paid entitled it to such broad benefits. We find it most difficult to believe that Lyons and its lawyers really had an expectation that Lyon's premiums were buying protection against so many uncovered risks.

Charles E. Spevacek and Robert 1. Graff, *Revisiting the Duty to Defend*, CGL Reporter (Fall 1998) (quoting from *Scotts-*

*dale Ins. Co. v. Homestead Land Dev. Corp.,* 145 F.R.D. 523, 531 (N.D.Cal.1992)).

Accordingly, AMERICAN NATIONAL's Motion for Summary Judgment (docket No. 19009) is **GRANTED** and AIICO's Third Amended Cross Claim (docket No. 8702) is hereby **DISMISSED.**[5] Judgment shall be issued.

IT IS SO ORDERED.

**5.** AIICO/ISOP's Cross Motion for Summary Judgment (docket No. 19024) is hereby DE-    NIED.